Payne Housing Corporation v. Commissioner.
Payne Housing Corp. v. Commissioner
Docket No. 37533.
United States Tax Court
T.C. Memo 1954-85; 1954 Tax Ct. Memo LEXIS 156; 13 T.C.M. (CCH) 603; T.C.M. (RIA) 54190; June 30, 1954, Filed *156 Petitioner surrendered to the issuing corporation part of its stock in the corporation for the purpose of improving the financial condition of the corporation. The corporation carried the surrendered stock as treasury stock. Held: (1) Petitioner unconditionally surrendered the stock in question to the issuing corporation which became the owner thereof. (2) The stock was surrendered before May 31, 1949. (3) The amount of petitioner's loss is its basis, less the resulting increase in value of the stock which petitioner retained. (4) The amount of petitioner's cost basis of the surrendered stock is determined, and the amount of the increase in the value of the retained stock is determined. (5) A question of fact not raised in the pleadings of petitioner may not be considered. C. C. Legerton, Esq., 6331 Hollywood Boulevard, Los Angeles, Calif., for the petitioner. Clayton J. Burrell, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the fiscal years ending on May 31, 1948 and 1949, in the amounts of $5,444.12 and $100.74, respectively. Petitioner accepts some of respondent's *157 adjustments. The issue for decision involves surrender of stock by petitioner to the corporation which issued the stock. There are three questions: (1) Whether petitioner unconditionally surrendered the stock in question. (2) Whether the stock was surrendered during the taxable year ended on May 31, 1949, or later. (3) What the amount of the loss is, if any, if the first question is decided for petitioner. Findings of Fact The facts which have been stipulated are found accordingly. The stipulation is incorporated herein by this reference. The petitioner, a California corporation, was organized on June 6, 1947. Its place of business is in Van Nuys, California. It filed its returns with the collector for the sixth district of California. Petitioner, during the period in question, was engaged in the business of owning, leasing, and operating real estate, and of discounting accounts receivable. Its president was W. P. Payne. In 1949, petitioner's stock was held by Payne, his wife, and R. Morris. Payne owned 141.2 shares out of 200 shares of outstanding stock. All of petitioner's stock was issued for cash. At the end of 1948, petitioner owned 14,468 shares out of 42,568 shares *158 of stock (total shares outstanding) of W. P. Payne Co., hereinafter called "Payne Co." All of the outstanding stock of Payne Co. was owned by seven stockholders, including petitioner. Payne Co. was a California corporation with its place of business in Van Nuys. It was engaged in the plumbing and heating business. W. P. Payne was its president. In the spring of 1949, Payne Co. sustained an operating loss of more than $16,000, and it was in need of working capital, or financial assistance. A creditor, Ellis R. Jackson, was willing to give financial assistance upon certain conditions among which were the following: He was willing to loan Payne Co. $20,000 provided he received an option to purchase about one-third of the outstanding stock and become manager. He wanted the stock pledged as security for the note of Payne Co. A plan was worked out in accordance with such terms. At a meeting of petitioner's directors on April 25, 1949, a resolution was adopted by petitioner's directors to surrender, without any consideration, to Payne Co., 10,000 shares of Payne Co. stock in order to enable Payne Co. to carry out its contemplated transaction with Jackson. Petitioner's directors knew about *159 the plan. They intended to unconditionally surrender the 10,000 shares to Payne Co. In accordance with this resolution, petitioner unconditionally surrendered 10,000 shares of stock of Payne Co. to that corporation before May 31, 1949. The petitioner corporation did not have any agreement with Jackson to assign or pledge stock of Payne Co. to Jackson. Petitioner did not receive any consideration for the surrendered stock. No other stockholders of Payne Co. surrendered stock. Payne Co. became the unconditional owner of the 10,000 shares of stock which petitioner surrendered and it carried the 10,000 shares as treasury stock. On May 25, 1949, Jackson became the manager of Payne Co. under a written management contract. He loaned $20,000 to Payne Co. for which it gave its note. Payne Co. issued a new certificate for 10,000 shares of its capital stock (the stock surrendered by petitioner) to Norma Jackson (Jackson's nominee), as pledgee. The treasury stock was pledged as security for Payne Company's note for $20,000, but Jackson did not become a stockholder. Payne Co. gave Jackson an option to purchase the pledged treasury stock at any time before the loan was repaid for $1 a share. *160 At the time the petitioner made the surrender of 10,000 shares to Payne Co., it held one certificate for 14,468 shares, all of the stock which it owned. Petitioner delivered the single certificate to Payne Co., and Payne Co. issued a new certificate to petitioner for 4,468 shares, the remaining number of shares left after surrender of 10,000 shares. Payne Co. did not retire or cancel the 10,000 shares of stock which petitioner surrendered. It carried the stock as treasury stock in its balance sheet. After petitioner surrendered the 10,000 shares there were 32,568 shares outstanding which were held by seven stockholders, including the petitioner. The treasury stock was used as collateral pending the possible exercise of the option to purchase given to Jackson. Payne Co. continued to do poorly. It was unable to repay the full amount of Jackson's loan, and at some time after May 31, 1949, he obtained a judgment against Payne Co. for $12,000, the balance due. Jackson did not exercise his option to purchase the 10,000 shares of stock. In March 1953, Payne Co. filed a petition in bankruptcy. The 14,468 shares of stock of Payne Co. which petitioner owned before it surrendered 10,000 *161 shares comprised three lots of stock. The cost of each lot and the dates of acquisition were as follows: No. of
Date of Acquisition
Shares
Cost
10/ 1/47
200
$10,200
7/26/48
8,600
25,000
10/30/48
5,668
0
14,468
$35,200
On October 1, 1948, petitioner sold some of its assets to Payne Co. The assets were carried on petitioner's books at a total value of $55,615.82. Payne Co. made payment for the assets by assuming debts of petitioner amounting to $31,143.84; by cancelling a debt of petitioner due to Payne Co. in the amount of $17,065.55; and by giving petitioner its note for $7,406.43. Payne Co. paid $1,737.71 on its note, leaving a purported balance of $5,668.72. The balance of the note was paid by issuing 5,668 shares of capital stock of Payne Co. to petitioner. In fact, however, the book value of the assets which petitioner transferred to Payne Co. was inflated to the extent of $12,600.35, which represented $5,000, par value, capital stock of Richland Plumbing and Heating Company, a corporation organized under the laws of the State of Washington, which was a wholly owned subsidiary of petitioner; and an indebtedness of Richland, due to petitioner, *162 in the amount of $7,600.35. On October 1, 1948, Richland was insolvent; its stock was worthless, and the account receivable from Richland was worthless, also. Both became worthless during the period from May 1 to October 1, 1948. Therefore, the assets which petitioner transferred to Payne Co. on October 1, 1948, were worth not more than $43,015.47, rather than $55,615.82. Since Payne Co. gave petitioner, in payment for assets worth only $43,015.47, consideration in the total amount of $49,947.10, there was, in fact, no balance owing petitioner at the time Payne Co. transferred 5,668 shares of its capital stock to petitioner, and that stock cost petitioner nothing. It did not cost petitioner $5,668. Richland Plumbing and Heating Company was organized in May 1948, with the expectation that it would receive a General Electric Corporation subcontract to do work at the Hanford Atomic Energy project near Richland, Washington. Richland Plumbing Company incurred expenses in preparation for the anticipated work. Payne Co. advanced funds to Richland Plumbing Company. By April 25, 1949, Richland Plumbing Company had sustained losses in excess of $36,000, and it owed Payne Co. more than $40,000. *163 In April 1949, Payne Co. sold about 162 shares of its stock to obtain working capital. The stock was sold for one dollar a share. The basis of the 10,000 shares of stock which petitioner surrendered to Payne Co. during May 1949 was $24,330.46. Before petitioner surrendered part of its Payne Company stock, the outstanding stock of Payne Co. had a book value of $2.02 per share. After petitioner donated 10,000 shares to Payne Co., the outstanding stock had a book value of $2.30 per share, or an increased value of 28 cents per share. The loss sustained by petitioner upon the surrender of 10,000 shares in Payne Co., which had a cost basis to petitioner of $24,330.46, was $23,079.42 after due allowance is made for $1,251.04 increase in book value of its remaining 4,468 shares by reason of the surrender of 10,000 shares. Petitioner donated the 10,000 shares to Payne Co. to improve Payne Company's financial condition. The petitioner sustained a net operating loss for the fiscal year ended May 31, 1949. Opinion The first question is whether petitioner unconditionally surrendered to Payne Co. 10,000 shares of the stock of that corporation in May 1949. The respondent has refused *164 to recognize the surrender of stock as an unconditional donation by a stockholder, the petitioner, to Payne Co. Respondent contends that petitioner made a pledge of its stock to Jackson in order to assist Payne Co. in its efforts to borrow money from Jackson; that Payne Co. merely issued two new stock certificates to take the place of the single certificate for 14,468 shares standing in petitioner's name; that petitioner assigned one of the new certificates (for 10,000 shares) to Jackson; and that, consequently, no loss was sustained by petitioner. The question whether petitioner donated part of its stock to Payne Co. is a question of fact, as is the question about the date of the alleged donation of stock. Upon careful consideration of all of the evidence, we find that petitioner donated 10,000 shares of Payne Co. stock to that corporation at some time during May 1949, before May 31; that petitioner unconditionally surrendered the 10,000 shares to Payne Co.; that petitioner received no consideration for surrendering the stock; that petitioner surrendered and donated the 10,000 shares to Payne Co. in order to improve the financial condition of Payne Co.; and that Payne Co. became *165 the owner of the 10,000 shares. Payne Co. was not a mere conduit, and petitioner did not pledge any of its stock with Jackson. If Jackson had exercised his option to purchase the 10,000 shares, Payne Co. would have received Jackson's payment for the stock. Petitioner and Payne Co. were separate and distinct corporations, carrying on separate business activities. Each was recognized as a separate entity for purposes of taxation. There must be proof that the arrangements were unreal or not bona fide if the respondent's contention is to be sustained. But there is no proof that the surrender of stock was a sham, or was colorable, or was not complete and bona fide. The evidence establishes that petitioner, receiving no consideration, donated 10,000 shares to Payne Co., and that Payne Co. was, thereupon, the owner of the stock. The resolution of petitioner's directors, adopted at a meeting on April 25, 1949, is not ambiguous; it establishes clearly petitioner's intent. Petitioner's intent was to donate the stock to Payne Co. for the purpose of improving its financial condition. Payne Co. issued a new certificate for 10,000 shares to Jackson's nominee to secure its own note for $20,000, *166 and, also, gave Jackson an option to purchase the stock for one dollar a share. Under section 1714 of the Corporation Code of California, Payne Co. could dispose of the stock which petitioner surrendered. The second question is whether petitioner sustained a loss, and, if so, the amount of the loss. In its return for 1949, petitioner deducted $28,247.66 as the amount of the loss sustained upon its donation of the stock to Payne Co. Since petitioner surrendered part of its stock to Payne Co. to improve the financial condition of Payne Co., it may take a deduction for a loss. See , and cases cited therein. Respondent does not contend otherwise. The next question relates to the amount of the loss sustained. The loss must be "measured by the basis of the stock surrendered, less the resulting improvement in value of the stock retained." ; and . The book value of the remaining shares of stock of Payne Co. after the surrender of the 10,000 shares of stock, was not greatly increased, but (as we find, to the best of our ability *167 in using rather scant balance sheet information) it was increased to the extent of 28 cents per share, or $1,251.04. Accordingly, we find that petitioner sustained a loss of $23,079.42. The petitioner contends that the loss should be measured by the cost basis of the surrendered stock without any decrease in that amount for increase in value attaching to the remainder of the stock which it held. As authority for this contention, petitioner relies upon ; ; and . We have considered these cases but they are not in point. See . Petitioner, on brief, does not challenge the contention of the respondent that one of the items included in the assets sold to Payne Co. on October 1, 1948, namely, the account receivable due from Richland in the amount of $7,600.35, was worthless on October 1, 1948. However, on brief, petitioner contends that upon a finding of worthlessness of the debt of Richland, it is entitled to a deduction for a bad debt in the amount of $7,600.35. The *168 question of whether petitioner is entitled to a deduction of $7,600.35 for a worthless debt in its taxable year ended May 31, 1949, has never been at issue in this proceeding as an issue involving a claim for a bad debt deduction. Therefore, under the long established rule of this Court that it cannot consider a question which is not put in issue by the pleadings and tried, we refrain from considering and deciding this question. ; . This rule must be followed here even though it may seem to be harsh under the circumstances. The parties, of course, may dispose of the matter by filing a stipulation with the Court to be given effect in the Rule 50 recomputation. The respondent does not dispute petitioner's right to a net operating loss carryback from the 1949 taxable year. Under our holdings, it follows that petitioner had a net operating loss in its taxable year ended May 31, 1949. The amount thereof is to be recomputed under Rule 50. Rule 50 recomputations are necessary because, also, petitioner has accepted other determinations of the respondent. Decision will be entered under Rule *169 50.